IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| LAMONT D. F., | ) |
| Plaintiff, | ) |
| v. | ) Action No. 4:20cv11 |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Plaintiff Lamont D.F.'s ("Plaintiff") Complaint, ECF No. 3, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Andrew Saul, the Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for Supplemental Security Disability Income ("SSDI") under the Social Security Act ("SSA"). Plaintiff filed a Motion for Summary Judgment, ECF No. 14, and the Commissioner filed a cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 17, 18, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, the Commissioner's

Motion for Summary Judgment, ECF No. 17, be **DENIED**, and the final decision of the Commissioner be **VACATED and REMANDED.**

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on November 25, 2017 and a Title XVI application for supplemental security income on August 14, 2018. R. at 17.[1] His application was initially denied on June 28, 2018, and again denied upon reconsideration on February 1, 2019. *Id.* Plaintiff then requested a hearing in front of an administrative law judge ("ALJ"), which was conducted on September 17, 2019. *Id.* Plaintiff appeared at the hearing with representation and an impartial vocational expert. *Id.* On November 15, 2019, the ALJ issued a decision denying Plaintiff's application. R. at 17–35. Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on December 4, 2019. R. at 1–4. The Appeals Council denied Plaintiff's request for review because the Appeals Council found no reason under the rules to review and amend the ALJ's decision, making the ALJ's decision the Commissioner's final decision. *Id.*

Having exhausted his administrative remedies, on February 6, 2020, Plaintiff filed the instant Complaint for judicial review of the Commissioner's decision. ECF No. 3. The Commissioner filed an Answer on April 27, 2020. ECF No. 8. Following the afore-described summary judgment briefing, the matter was referred to the undersigned, and is now ripe for recommended disposition.

---

[1] "R." refers to the certified administrative record that was filed under seal on December 12, 2019, ECF No. 9, pursuant to Local Civil Rules 5(B) and 7(C)(1).

2

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was born on April 12, 1974 and was thirty-six years old at the time of his alleged disability onset date, making him a "younger individual" under the SSA's regulations. R. at 33. *See also* 20 C.F.R. §§ 404.1563, 416.963(c) (defining anyone under the age of fifty as a "younger person."). Plaintiff has at least a high school education and is able to communicate in English. R. at 34. Plaintiff was previously employed as a gate agent for United Airlines in 2006 and a salesperson for Petco in 2010. R. at 54–55. Plaintiff was last employed in November 2018 in a part-time seasonal position as a department store cashier. R. at 53. On September 17, 2019, Plaintiff appeared with counsel before the ALJ at a virtual administrative hearing. R. at 17. Both Plaintiff and an impartial vocational expert ("VE") testified at the hearing. *Id.* The record included the following factual background for the ALJ to review.

### A. Evidence Relevant to Plaintiff's Alleged Physical Impairments

During a consultative examination in March 2015, Plaintiff complained of epilepsy, partial blindness, diabetes, sleep apnea, psychological issues, migraine headaches and back pain related to a workplace fall from ten years earlier. R. at 449. After walking to the examination room without assistance, the examination revealed normal range of motion throughout, negative straight leg raising, moderate paravertebral sensation, and normal reflexes. R. at 450–51. The doctor opined that Plaintiff could perform light work with occasional postural activities, frequent manipulation, and no exposure to heights or heavy machinery. R. at 451–52.

In October 2016, Plaintiff's primary care provider opined that he was unable to sustain gainful employment for twelve consecutive months due to his ongoing mental health and psychiatric challenges. R. at 584. The Doctor also indicated that, due to his seizure disorder, Plaintiff had a low threshold for stress tolerance and was not suited for skilled labor. *Id.* In

2017, Plaintiff sought emergency treatment for toe pain related to neuropathy. R. at 531. The examinations showed decreased sensation in the feet, but otherwise normal range of motion, full strength, and a normal gait. R. at 534. Subsequent nerve testing showed peripheral neuropathy and mild radiculopathy. R. at 718. Plaintiff again sought emergency treatment for complaints of generalized muscle pain. R. at 460. At a follow up treatment for the generalized muscle pain, an examination revealed tenderness in the hands, patchy decreased sensation, full motor strength, equal reflexes, and a normal gait. R. at 464–65. Plaintiff relocated to Seattle and reported bilateral heel pain to his new primary care provider. R. 473, 476. In December 2017, Plaintiff's physician rewrote a Work First form to state that he could "not engage in any gainful employment/or occupational training" and should continue with the vocational rehabilitation program. R. at 486. In April 2018, Plaintiff received a neurological consultation. R. at 560–62. In a letter to the state division of rehabilitation services, the neurologist noted that Plaintiff reported two seizures a month despite compliance with medication. R. at 560. Plaintiff explained that his seizures were preceded by ringing in his ears, that allowed him to lie down before they occurred. *Id.* Accordingly, he reported that he had not been injured, nor had he experienced tongue biting or incontinence in relation to his seizures. *Id.* The Neurologist opined that Plaintiff's frequent seizures created a great deal of employment restrictions but maintained that he could hold certain jobs related to his current volunteer activities. R. at 561. Despite his underlying conditions and impairments, Plaintiff volunteered for a non-profit organization in which he visited schools to instruct students and teachers on what to do when a student had a seizure in school. R. at 560.

A 2018 ophthalmic examination showed right eye blindness and 20/20 vision in his left eye with signs of diabetic retinopathy. R. at 580–81. In January 2019 Plaintiff moved to

Virginia and acquired a new primary care provider. R. at 794. Objective examination findings from the new provider were largely normal with motor strength, sensation, and range of motion all within normal limits. R. at 765–66. The functional assessment, from a consultative examination that same month, indicated that he was capable of a range of medium work. R. at 766. After complaining of increasing foot pain shortly thereafter, Plaintiff was later diagnosed with bilateral contracture of the feet, plantar fascial fibromatosis, and bilateral Achilles tendinitis in the legs with bilateral foot pain. R. at 840.

Plaintiff also underwent an MRI of his head in April 2019 to evaluate his seizures. R. at 775. The MRI revealed no evidence of any lesion that might act as epileptogenic foci. *Id.* Finally, in July 2019, a physician's assistant at his primary care provider opined that Plaintiff's pain affected his concentration and memory rendering him unable to focus or stay on task 100% of the workday. R. at 863–64. Accordingly, he required extra rest breaks and bed rest that would equate to an inability to work 15 days per month, sit for less than one hour in an eight-hour workday, and lift up to five pounds. *Id.*

**B. Evidence Relevant to Plaintiff's Alleged Mental Impairments**

Plaintiff also underwent a consultative psychiatric evaluation in March 2015. R. at 453–57. Plaintiff reported that he was unable to work due to his seizures. R. at 453. While his seizures did not interfere with his work, his fear of having a seizure was the reason he could not work. R. at 453–54. Plaintiff also reported a history of abuse as a child and symptoms of social difficulty and anxiety. R. at 453. Plaintiff reported a depressed mood since 2011 when he lost his job, allegedly due to a miscommunication, and the departure of his wife and children. R. at 453–54. Plaintiff's mental status examination revealed that Plaintiff was well groomed, anxious, and generally uncooperative throughout the examination. R. at 454. In light of Plaintiff's

guarded nature, the examiner suspected that there were some "factitious elements" to his answers. R. at 454–55. He also presented with paranoid thoughts, but he maintained normal speech, a linear thought process, intact memory, good attention, concentration, insight, and judgment. R. at 455.

The examiner also noted that Plaintiff performed all activities of daily living independently, including grocery shopping, cooking, and handling his own finances without difficulty. R. at 455. Plaintiff reported that he had difficulty concentrating, but he could concentrate long enough to complete independent activities associated with daily living. R. at 455. The examiner indicated that there were no clear signs of deterioration or decompensation in his past work, nor were there signs of deterioration in his cognitive functioning based on his history and positive cognitive performance. R. at 455. The examiner opined that the main concerns regarding work were Plaintiff's characterological issues. R. at 456. Nevertheless, given Plaintiff's executive function, concentration, persistence, and memory, she saw no cognitive reason why Plaintiff would be unable to work. *Id.*

In August 2017, upon his return to New Jersey, Plaintiff sought mental health treatment. R. at 737–47. A mental status examination showed that Plaintiff was defensive and guarded but cooperative. R. at 740. Despite a notably sad disposition, Plaintiff presented with normal indicators for memory, insight, and judgment. R. at 746. Plaintiff was ultimately assessed with depression. R. at 746.

Plaintiff underwent another consultative evaluation in January 2019. R. at 760–62. He appeared to be neatly dressed and well-groomed, despite his generally constricted affect. R. at 760. Plaintiff described himself as mellow, calm, and not happy or sad. R. at 760. The examiner indicated that his concentration was ok, and plaintiff believed that he was capable of

working but expressed concern for the possibility of interference from his seizures. R. at 760–61. Plaintiff also indicated that he attended AA meetings daily. R. at 761. The examiner ultimately recommend that Plaintiff seek psychotherapy services and medication management of his depression. R. at 762. In July 2019, Plaintiff was assessed for outpatient mental health treatment. R. at 891. While his affect was flat, his mood was calm, and his examination produced results within the normal limits. *Id.* Plaintiff was assessed with mild and recurrent major depressive disorder. *Id.*

A state agency psychologist reviewed the evidence in this case and opined that Plaintiff should have limited contact with colleagues due to difficulty getting along with others, but this did not present significant limitations in his ability to carry out very short and simple instructions, maintain a routine, and make simple work-related decisions. R. at 220–22.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Acting Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Acting Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520). Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 1, 2011, the alleged onset date of disability. R. at 20. Second, the ALJ found that Plaintiff had the following severe impairments: polyarthralgia; diabetes mellitus; neuropathy; seizure disorder; obstructive sleep apnea; monocular vision; major depressive disorder; anxiety disorder; posttraumatic stress disorder; plantar fascial fibromatosis; and Achilles tendinitis. R. at 20. Plaintiff also complained of excessive diarrhea and cramping in June 2019, however physical examination of his abdomen was unremarkable. R. at 21. The ALJ ultimately opined that the abdominal issue was a non-medically determinable impairment with no diagnosis from medically acceptable clinical or laboratory diagnostic techniques. *Id.*

Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 CFR 404.1520(d), 404.1525, and 404.1526. R. at 21. The ALJ reviewed the aforementioned severe impairments in turn, with the exception of the seizure disorder, and determined that none of them met or medically equaled a

8

listing or SSR. R. at 21-25. Similarly, the ALJ reviewed the severity of Plaintiff's mental impairments individually and in combination to determine whether the "paragraph B" criteria were satisfied. R. at 22. The ALJ opined that overall, Plaintiff's mental health records did not indicate more than moderate limitations. R. at 22. The records contained mental status examinations that were largely within normal limits, conservative outpatient treatment, and no history of inpatient treatment or crisis stabilization services since the alleged onset date. *Id.* After reviewing the record, mental status examinations, and testimony related to the relevant "paragraph B" findings, the ALJ specifically held that Plaintiff had mild limitations in the following areas: understanding, remembering, or applying information; interacting with others; adapting or managing oneself. R. at 22–24. Additionally, the ALJ determined that Plaintiff had a moderate limitation in the area of concentrating, persisting or maintaining pace, specifically noting "[h]is pain could reasonably interfere with his ability to concentrate, persist, and/or maintain pace." R. at 24. Similarly, the ALJ opined that Plaintiff's mental impairments did not satisfy the "paragraph C" criteria as the record did not indicate that his documented mental disorders are "serious and persistent". R. at 24. Viewed as a whole, the ALJ concluded that Plaintiff's impairments did not individually or in combination satisfy the "paragraph B or C" criteria, nor arise to the level of severity that would prevent him from doing any gainful activity regardless of age, education, or work experience. R. at 25.

In keeping with his impairment finding, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work. *Id.* Plaintiff initially alleged functional limitations due to blindness/low vision, epilepsy, depression, sleep apnea, and neuropathic pain. *Id.* After review of the related evidence and testimony, the ALJ noted, despite Plaintiff's medically determinable impairments, his statements concerning the intensity,

persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence in the record. R. at 26. Giving some benefit of the doubt to Plaintiff's allegations, the ALJ acknowledged that Plaintiff could perform light work in light of his uncontrolled diabetes with peripheral neuropathy and radiculopathy affecting his lower extremities. R. at 27. The ALJ also acknowledged the need for appropriate postural limitations, as well as limited foot and handling abilities. *Id.* Additionally, the ALJ found that Plaintiff should avoid all hazards and driving commercial vehicles due to his intermittent seizures and monocular vision. *Id.* These functional limitations were largely affirmed during the March 2015 consultative physical examination and subsequent medical visits. *Id.* Notably, Plaintiff continued to report two seizures a month to his Neurologist in April 2018 despite compliance to the prescribed medication. *Id.* The subsequent neurological examination was unremarkable, but Plaintiff's Neurologist suspected a seizure disorder with unknown etiology. *Id.* Relatedly, an April 2019 MRI did not reveal any evidence of any lesion that could act as an epileptogenic foci. R. at 28.

The ALJ determined that Plaintiff was unable to perform his past work as a gate agent and a salesperson for pets and supplies, both of which were defined as light and semi-skilled work. R. at 33. The ALJ clarified that transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support the finding that the claimant is not disabled regardless of transferable job skills. R. at 34. Accordingly, while Plaintiff is unable to resume his prior employment, the ALJ determined that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. *Id.* Therefore, the ALJ determined that Plaintiff was not disabled from the alleged onset date, March 1, 2011, through the date of his decision, November 15, 2019. R. at 35.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Even if substantial evidence supports the Commissioner's factual findings in support of a benefit denial, a district court may reverse if the ALJ committed errors of law." *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 764 (W.D. Va. 2002). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## V. ANALYSIS

Plaintiff presents one claim of error, that substantial evidence does not support the ALJ's decision that Plaintiff was not disabled because his combination of impairments make him so.

ECF No. 14. At the outset, Plaintiff filed his lawsuit *pro se* and appears too seek a jury determination of his disability status, *de novo*. *Id.* This action, however, is an administrative record review where the court determines whether substantial evidence supports the Commissioner's decision, and whether he followed the law in doing so.

Plaintiff argues that that his combined illness of epilepsy, diabetes, neuropathy, fibromyalgia, arthritis sleep apnea, depression, PTSD, and blindness in his right eye equal the SSA's definition of disabled. ECF No. 14. at 1. The Court need not reach this question, however, because of the ALJ's error as a matter of law at step three of her analysis. At step two, the ALJ found that Plaintiff had the following severe impairments: polyarthalgia; diabetes mellitus; neuropathy; seizure disorder; obstructive sleep apnea; monocular vision; major depressive disorder; anxiety disorder; posttraumatic stress disorder; plantar fascial fibromatosis; and achilles tendinitis. R. at 20. However, at step three, the ALJ failed to evaluate at all Plaintiff's seizure disorder to determine if it met or equaled a listed impairment. In addition, the ALJ erred at this step by inadequately evaluating Plaintiff's plantar fascial fibromatosis and Achilles tendinitis.

At step three of the well-known five step sequential analysis, the ALJ must determine, for all severe impairments which the ALJ has found, whether "the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1". *Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920). The ALJ found that Plaintiff's seizure disorder was a severe impairment, and the most apparent potential listing of Plaintiff's seizure disorder would be for epilepsy. Epilepsy is a seizure disorder and a listed

12

impairment categorized as a neurological disorder, at Section 11.02 of Appendix 1. The listing criteria for epilepsy are:

> **11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:**
> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).
> OR
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).
> OR
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).
>    OR
>    D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

Despite acknowledging the Plaintiff's seizure disorder as severe in step two of her analysis, the ALJ did not evaluate Plaintiff's seizure disorder under this listing, nor even discuss it all. R. at 21-25. Further, the ALJ did not evaluate Plaintiff's seizure disorder under the potentially relevant and alternative listings for nonepileptic or pseudo seizures under Section 12.07 of Appendix 1.

At Step three, the ALJ evaluated Plaintiff's other severe impairments under the following sections: 1.02 (major dysfunction of a joint), 11.14 (peripheral neuropathy), 3.02 (chronic respiratory disorders), 2.02 (loss of central visual acuity), 2.03 (contraction of the visual field in the better eye), 2.04 (loss of visual efficiency, or visual impairment, in the better eye), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.15 (trauma and stressor-related disorders). R. at 21–22. The ALJ ultimately found that none of these severe impairments "either singly or in combination" meet or medically equal the relevant listings and "are not severe enough to prevent him from doing any gainful activity, regardless of his age, education, or work experience." R. at 22, 25. Without explanation, the ALJ did not even mention Plaintiff's seizure disorder under any listing at step three of her analysis. Notably, in her brief to the Court, the Commissioner also did not address Plaintiff's seizure disorder in his discussion of the ALJ's step three analysis. ECF No. 18 at 18–20.

The ALJ's failure to determine if Plaintiff's seizure disorder met or medically equaled a listed impairment was an error that prevents the Court form determining if her decision is supported by substantial evidence. As previously stated, in the requisite sequential analysis the ALJ must determine whether all severe impairments "meet[ ] or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1". *Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920). Thus, once the ALJ identified Plaintiff's seizure disorder as a severe impairment, she was required to assess the disorder at step three of the analysis. The ALJ inquired about the seizure disorder directly with Plaintiff at the hearing. R. at 63–65. Moreover, the ALJ considered Plaintiff's seizure disorder and the report of his treating neurologist when assessing Plaintiff's RFC in step four of the sequential analysis. R. at

27-32. Had the ALJ determined that Plaintiff's seizure disorder met or equaled the listing for epilepsy under 11.02, the regulations would have required that he be found "disabled." Failing to answer this question leaves an absence of substantial evidence as it relates to the effect, individually or in combination, of this severe impairment.

Finally, the ALJ found there was no listing for plantar fascial fibromatosis or Achilles tendinitis, but stated "the undersigned compared the claimant's findings with those for closely-related listed impairments. The record does not indicate that the findings are at least of equal medical significance to those of a closely-related listed impairment. (Exs. C1F-C9F, C11F-C12F, C15F-C21F, C23F, and C25F-C26F)." R. at 25. This was also error, because the ALJ failed to identify the "closely-related" listed impairments she was comparing to these two severe impairments, and she failed to explain what specific evidence in the record supported this conclusion. Instead, she merely cited to large sections of medical records generally. *Id.* Consequently, the ALJ's conclusory finding does not give the Court any basis upon which to determine whether it was supported by substantial evidence. *See Hayes v. Saul*, No. 7-18cv145D, 2019 WL 3891345, at *3 (E.D. Va. July 22, 2019) ("An ALJ's failure to compare a claimant's symptoms to the relevant listing or to explain, other than in a summary or conclusory fashion, why the claimant's impairments do not meet or equal a listing 'makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

Therefore, the Court **FINDS** that substantial evidence does not exist in the record to support the ALJ's findings at step two of the sequential analysis that Plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal one of the listed impairments.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 14, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 17, be **DENIED**, and the final decision of the Commissioner be **VACATED and REMANDED**. Further, Plaintiff's Motion for Expedited ruling should be **DISMISSED** as moot, and Plaintiff's Motion for a Jury Trial should be **DENIED**, ECF No. 20, as reviews of social security determinations are administrative record reviews.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to *pro se* Plaintiff and forward a copy of the same to counsel for the Commissioner.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
January 27, 2021